Catterson, J.
(concurring). Although I concur in the outcome, namely the dismissal of Katz 737 Corp.’s (hereinafter referred to as the landlord) complaint, I do so on the ground that the landlord failed to plead fraud with particularity. I disagree with Justice Andrias’s concurrence that the landlord’s common-law cause of action for damages arising from the defendants’ alleged fraud is preempted by the luxury decontrol statute. I also disagree with the majority that the landlord’s action is foreclosed on the ground that the New York State Division of Housing and Community Renewal (hereinafter referred to as DHCR) has “exclusive” jurisdiction in the matter, and that the landlord cannot “relitigate” an issue already decided by the agency. As set forth more fully below, well-established precedent militates against extinguishing common-law claims and remedies even where legislative regulatory schemes exist. Moreover, in this *155 case, the statute does not provide a remedy for the landlord’s allegation that the defendants circumvented the statutory scheme by fraudulent conduct.
The defendants, Lester Cohen and Carol Cohen, have resided as tenants in an apartment at 737 Park Avenue between 71st and 72nd Streets in Manhattan since April 1989. The lease and tenancy at issue are subject to the New York Rent Stabilization Law. The Cohens’ current rent is $3,060 per month. Lester Cohen, who is over 80 years old, is retired. Carol Cohen was, until 2010, a real estate broker employed as a senior vice-president by nonparty Corcoran Group.
Mrs. Cohen asserted that she worked with “a group” of brokers at Corcoran Group and that she only earned a small portion of the real estate commissions that were split among the brokers in the group at her superiors’ discretion, and only sifter the deduction of expenses like advertising, transportation, and overhead and office staff salaries.
Every year, from 2004 through 2008, the landlord challenged the Cohens’ qualification for rent-regulated status with the DHCR. The DHCR denied each of the landlord’s petitions seeking deregulation.
By statute enacted in 1993 (amended effective as of 1998), the legislature provided for the DHCR to deregulate apartments with rents in excess of $2,000 per month where the occupants earned more than a specified “threshold” dollar amount per year (originally $250,000 per year, amended effective as of 1998 to $175,000 per year) for two consecutive years. (Administrative Code of City of NY § 26-504.3.) This income is measured by the occupants’ federal adjusted gross income as reported on their New York State income tax returns. (See id.; Rent Stabilization Code [9 NYCRR] § 2531.1 [a], [b]; Gudz v Jemrock Realty Co., LLC, 2011 NY Slip Op 31647[U] [Sup Ct, NY County 2011].) The denial of a petition to deregulate an apartment applies only to the year under review, and each annual lease cycle thereafter “is processed separately on its own merits.”
The landlord did not file for deregulation of the Cohens’ apartment in either 2009 or 2010. However, in December 2010, the landlord commenced the instant plenary action against the Co-hens asserting three causes of action, namely: (1) for fraud, (2) for a judgment declaring that the Cohens had annual income that exceeded $175,000, warranting the deregulation of the apartment, and (3) for indemnification for the $3,635.40 that the landlord allegedly paid to the Cohens’ downstairs neighbor *156 for damages allegedly caused by an unrepaired leak in the Co-hens’ apartment.
The Cohens moved to dismiss the action pursuant to CPLR 3211 (a) (2) (lack of subject matter jurisdiction), 3211 (a) (7) (failure to state a cause of action) and 3211 (a) (10) (failure to join a necessary party). They also sought sanctions against the landlord for frivolous conduct, attorneys’ fees and costs.
The landlord opposed the motion, arguing that it had incurred losses due to the Cohens’ submission of fraudulent earning statements and that the Supreme Court was the only court that could award it damages for those losses. The landlord argued that since the DHCR had no statutory authority to “look behind” the Cohens’ filed state tax returns (see generally Matter of Nestor v New York State Div. of Hous. & Community Renewal, 257 AD2d 395 [1st Dept 1999], lv dismissed in part and denied in part 93 NY2d 982 [1999]), the instant action was required to enable Katz to obtain discovery to find the truth as to the Cohens’ actual income.
The landlord argued that it had conducted an investigation and learned that Mrs. Cohen was a highly successful broker whose group sold “hundreds of millions of dollars of New York real estate.” It argued that in light of such sales, Mrs. Cohen should have had annual earnings of more than $175,000 and that the sales information alone supported the instant pleadings, and warranted giving it an opportunity to obtain discovery on the “income” issue. The landlord argued that absent the instant plenary action, it had no way of obtaining the necessary discovery to establish that the Cohens’ income exceeded the annual threshold deregulation amount of $175,000.
By order entered September 30, 2011, the court granted the Cohens’ motion to dismiss the landlord’s action. The court found that the complaint was “completely baseless” and failed to state a cause of action, particularly as the DHCR had already ruled on the landlord’s attempts to deregulate the unit and had denied the relief the landlord sought. The court found that the landlord was improperly attempting to “circumvent the authority of the DHCR.”
For the reasons that follow, in my opinion, the landlord’s common-law cause of action is not preempted by luxury deregulation law. Furthermore, the DHCR’s decisions on the landlord’s petitions to deregulate the Cohens’ apartment do not bar the landlord’s subsequent assertion of a common-law cause of action.
*157 The Court of Appeals and this Court have repeatedly held that common-law causes of action have viability independent of many legislatively created regulatory schemes. In ABN AMRO Bank, N.V. v MBIA Inc. (17 NY3d 208 [2011]), the Court of Appeals was faced with the question of whether the plaintiffs’ common-law fraud claims were preempted by the power of the State Superintendent of Insurance to approve the restructuring of the defendants under various provisions of the Insurance Law.
The plaintiffs attacked the restructuring in a plenary action predicated on common-law fraud, alleging that the restructuring contained a series of fraudulent conveyances designed to allow the defendants to escape their insurance obligations. The defendants moved to dismiss, contending that the complaint was merely a “collateral attack” on the Superintendent’s approval of the restructuring.
A majority of this Court had agreed with the defendants that “[a] plenary action that seeks the overturn of the Superintendent’s determination, or challenges matters that the determination necessarily encompasses, constitutes ‘an impermissible “indirect challenge” ’ to that determination.” (ABN AMRO Bank, N.V. v MBIA Inc., 81 AD3d 237, 246 [1st Dept 2011], citing Fiala v Metropolitan Life Ins. Co., 6 AD3d 320, 321 [1st Dept 2004].) However, our statement on the question of “collateral attack” only applied to claims brought under the Debtor and Creditor Law. The common-law claims were all generally dismissed for failure to state a cause of action.* Finally, we noted that the only appropriate method of challenging the Superintendent’s determination was through a CPLR article 78 petition.
The Court of Appeals reversed, beginning its analysis with the observation:
“It is fundamental that ‘Article VI, § 7 of the NY Constitution establishes the Supreme Court as a court of “general original jurisdiction in law and equity” ’ (Sohn v Calderon, 78 NY2d 755, 766 [1991], quoting NY Const, art VI, § 7 [a]). ‘Under this grant of authority, the Supreme Court “is *158 competent to entertain all causes of action unless its jurisdiction has been specifically proscribed” ’ (id., quoting Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166 [1967]). Indeed, ‘it has never been suggested that every claim or dispute arising under a legislatively created scheme may be brought to the Supreme Court for original adjudication’ (id.). Thus, ‘the constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program’ (id. at 767).” (17 NY3d at 222-223.)
The Court then framed the issue thus: whether or not the Superintendent was the “exclusive arbiter of all private claims that may arise” in connection with the defendants’ restructuring. (17 NY3d at 224.) In language equally applicable to the instant case, the Court stated:
“Defendants’ contention, taken to its logical conclusion, would preempt plaintiffs’ Debtor and Creditor Law and common-law claims. We reject this argument and conclude that there is no indication from the statutory language and structure of the Insurance Law or its legislative history that the Legislature intended to give the Superintendent such broad preemptive power (see Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y., 44 NY2d 336, 342-343 [1978] [‘Although (the Public Employment Relations Board [PERB]) has exclusive jurisdiction of labor disputes between public employers and public employees involving the right to organize and the right to negotiate in good faith, this jurisdiction does not mean that any and all disputes between such parties fall exclusively to PERB. PERB’s jurisdiction encompasses only those matters specifically covered by the Taylor Law’]).” (17 NY3d at 224.)
Important to the Court’s analysis were the observations that the plaintiffs’ rights under the Debtor and Creditor Law and, necessarily, the common law were “historic” and that the Superintendent was without the authority to even consider the plaintiffs’ claims. (17 NY3d at 224.) Finally, the Court held that the plaintiffs’ claims could not be raised in an article 78 proceeding. (17 NY3d at 225.)
*159 The Court followed ABN AMRO Bank with Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc. (18 NY3d 341 [2011]). In that case, the plaintiff asserted a series of common-law claims of breach of fiduciary duty and gross negligence. The defendant moved to dismiss on the grounds that the common-law claims were precluded by the Attorney General’s broad grant of power to prosecute “fraudulent securities and investment practices” under the Martin Act. (18 NY3d at 349.) In examining the scope of the statute, the Court stated:
“Legislative intent is integral to the question of whether the Martin Act was intended to supplant nonfraud common-law claims. It is well settled that ‘when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute’ (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 324 [1983] [internal quotation marks and citation omitted]). We have emphasized that ‘a clear and specific legislative intent is required to override the common law’ and that such a prerogative must be ‘unambiguous’ (Hechter v New York Life Ins. Co., 46 NY2d 34, 39 [1978]).” (18 NY3d at 350-351.)
The Court then observed that the Martin Act “does not expressly mention or otherwise contemplate the elimination of common-law claims.” (18 NY3d at 351, citing ABN AMRO Bank, N.V., 17 NY3d at 224.) The Court distinguished its prior holdings in CPC Intl. v McKesson Corp. (70 NY2d 268 [1987]), and Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership (12 NY3d 236 [2009]), by stating:
“Read together, CPC Inti, and Kerusa stand for the proposition that a private litigant may not pursue a common-law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute. But, an injured investor may bring a common-law claim (for fraud or otherwise) that is not entirely dependent on the Martin Act for its viability. Mere overlap between the common law and the Martin Act is not enough to extinguish common-law remedies.” (18 NY3d at 353.)
In my opinion, Justice Andrias makes an erroneous extrapolation from case law pertaining to the Martin Act: Those cases *160 involved preemption issues based on a distinction between the exclusive enforcement authority of the Attorney General and the rights of private litigants. Justice Andrias’s reliance on Han v Hertz Corp. (12 AD3d 195 [1st Dept 2004]) is misplaced for the same reason since he does not take issue with who has the right to pursue the claim. Nor does he suggest that the landlord is simply “rephrasing” a claim that precludes a private lawsuit. Instead, he finds that the statutory scheme precludes a common-law action because the landlord’s entire cause of action is dependent on the existence of the luxury deregulation statute.
There is simply no authority to support such a view. Moreover, the cause of action in this case is not predicated on a violation of the statute per se, but rather on the allegation that the Cohens have circumvented the statutory scheme in order to defraud the landlord of its rightful rent. To be sure, the landlord could not bring the common-law action if the Rent Regulation Reform Act of 1993 (L 1993, ch 253) (hereinafter referred to as Reform Act) had not been enacted. However, the Reform Act would not exist except for the legislature’s decision to remedy “th[e] glaring inequity in the rent regulation system whereby property owners [are] required to subsidize high income tenants residing in rent-controlled and rent-subsidized apartments.” (Matter of Classic Realty v New York State Div. of Hous. & Community Renewal, 309 AD2d 205, 212-213 [1st Dept 2003, Sullivan, J., dissenting] [internal quotation marks omitted], revd 2 NY3d 142 [2004].) It would make no sense, therefore, to enact a statute to rectify an inequitable rent situation, but deny a landlord any remedy when a tenant attempts to fraudulently circumvent the statute, let alone a remedy that has existed at common law since the founding of the Republic. In my opinion, this is precisely the type of overlap between a common-law claim and statute that the Court of Appeals held should not “extinguish common-law remedies.” (Assured Guar., 18 NY3d at 353.)
Moreover, this Court has consistently followed that direction from the Court of Appeals. In 61 W. 62 Owners Corp. v CGM EMP LLC (77 AD3d 330 [1st Dept 2010], mod on other grounds and remanded 16 NY3d 822 [2011]), we rejected the defendants’ contention that the New York City Noise Control Code precluded the plaintiff’s action in common-law nuisance. Similarly, and more importantly for its similarity to the posture of this case, in Chelsea 18 Partners, LP v Sheck Yee Mak (90 AD3d 38 [1st Dept 2011]), we reversed Supreme Court’s dismissal of the plaintiff landlord’s plenary action sounding in *161 common-law nuisance against the defendant tenants of a rent-controlled apartment. Supreme Court held, inter alia, in dismissing the action, that the landlord’s sole remedy lay in housing court pursuant to the rent regulation statutory scheme and that the court had no jurisdiction.
We began our analysis in that case in the same manner as the ABN AMRO Bank Court:
“As a threshold issue, Supreme Court has unlimited general jurisdiction over all plenary real property actions, including those brought by a landlord against a tenant. (NY Const, art VI, § 7 [a]; see Nestor v McDowell, 81 NY2d 410, 415 [1993].) Moreover, as the landlord correctly asserts, it is for the plaintiff to determine how, and in which court, to plead its case. (Lex 33 Assoc. v Grasso, 283 AD2d 272, 273 [1st Dept 2001] [plaintiff entitled to ‘chart its own procedural course’].) Thus, the tenants are entirely incorrect in asserting that Supreme Court lacks subject matter jurisdiction.” (90 AD3d at 41.)
The analysis of ABN AMRO Bank, Assured Guar., 61 W. 62 Owners, and Chelsea 18 Partners clearly controls the threshold issue in the instant dispute and mandates recognition of the validity of a common-law claim for fraud. There is nothing inherent in the statutory scheme for rent regulation that would preclude a common-law claim for fraud. If common-law claims were permitted to proceed in ABN AMRO Bank and Assured Guar, in the face of extensive statutory regulation, there can be no inherent bar merely because the statutory scheme is rent regulation.
Similarly, both nuisance in 61 W. 62 Owners and Chelsea 18 Partners, and fraud in the instant case are common-law causes of action asserted in the context of a complex statutory scheme of governmental regulation. Merely because the elements of each common-law cause of action are different, I find that there is no coherent argument for permitting a nuisance claim to proceed but not a claim for fraud, as a matter of law. The Co-hens point to no section of the Rent Stabilization Code that affirmatively bars such common-law claims, nor does Justice Andrias.
The majority, in my opinion, is incorrect in stating that the “law vests exclusive . . . jurisdiction in DHCR to determine whether a rent-stabilized tenant’s household income exceeds the threshold for deregulation” (emphasis added). First, there is *162 no such specific language in the statute. (See Administrative Code § 26-504.3.) Nor can exclusive jurisdiction be inferred based on the DHCR’s “specialized experience and technical expertise.” (See Sohn v Calderon, 78 NY2d 755, 768 [1991].) The statute simply provides that, in response to a landlord’s petition contesting that a tenant’s annual household income as shown on an income certification form (hereinafter referred to as ICF) is no more than $175,000, the DHCR requests the Department of Taxation and Finance (hereinafter referred to as the DTF) to verify the income. In turn, the DTF provides nothing more than a “yes” or “no” answer as to whether the tenant has understated the annual income on the ICF compared to that filed on the tenant’s annual tax return. There is no “specialized experience” or “technical expertise” required to carry out these steps. Indeed, I would posit exactly the opposite.
Further, as the landlord asserts, the Cohens’ position rests on a leap from the predicate that the DHCR has exclusive jurisdiction over petitions seeking to deregulate an apartment to the unsupported conclusion that anything that “emanates from” the deregulation provision must somehow also be within DHCR’s exclusive jurisdiction. However, the statute clearly does not provide the DHCR with any authority or any mechanism for testing the veracity of the income tax return, or for the investigation of fraudulent conduct. (See Matter of London Terrace Gardens v New York State Div. of Hous. & Community Renewal, 6 Misc 3d 1020[A], 2005 NY Slip Op 50132[U] [Sup Ct, NY County 2005].) Nor does it specifically state that a single DTF verification is the landlord’s exclusive remedy in the event that a landlord disputes a tenant’s ICF. Indeed, the DTF verification can hardly be characterized as a remedy; it is simply a step in the process of deregulation. Effectively, the statute does not provide the landlord with any remedy against a duplicitous tenant. In my opinion, therefore, the statute must be viewed as creating a framework by setting the schedule and formula (when rent is no less than $2,000 and annual household income is more than $175,000) for obtaining relief regardless of whether that relief is by statutory mechanism or common-law claim.
The majority, quoting Nestor (257 AD2d at 396), lauds the “simplicity] and consistency]” of the single DTF verification “methodology,” exhibiting a tunnel vision to the altar of primacy-of-statute, and thus ignoring the foundation of this country on the common law. By so doing, moreover, it ignores a *163 statement by the Court of Appeals that clearly contemplates the possibility of the DTF’s making an error. (See Classic Realty, 2 NY3d at 146 [“luxury decontrol procedures . . . contemplate a single verification, the result of which is binding on all parties unless it can be shown that DTF made an error” (emphasis added)].) Given the absence of any statutory provision that could rectify a verification based on fraud or deceit, the Court’s statement must be viewed as supporting the pursuit of a common-law remedy, especially where the challenge is to the veracity of the one document on which the DTF verification and the DHCR determination are based.
That being said, however, the Cohens argue convincingly that the fraud claim, as pleaded, fails to state a cause of action. To state a claim for common-law fraud, a plaintiff must allege a material misrepresentation of fact; that the misrepresentation was made with an intent to defraud or mislead; that the plaintiff reasonably relied upon the misrepresentation, and that it suffered damages as a result of its reliance. (See IDT Corp. v Morgan Stanley Dean Witter & Co., 63 AD3d 583, 586 [1st Dept 2009].) The landlord did not meet the strict pleading requirements of pleading fraud with particularity. (See CPLR 3016 [b]; Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178-179 [2011].)
On this record, the landlord’s fraud allegations, even construed most favorably to the landlord, are wholly speculative, since there are no allegations from which it could reasonably be inferred that the Cohens provided fraudulent income statements. There was no non-conclusory allegation that the Cohens earned more than $175,000 in two consecutive years and intentionally misrepresented their income to the DHCR. (See generally Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 560 [2009].)
Acosta and Manzanet-Daniels, JJ., concur with Tom, J.E; Andrias, J., concurs in a separate opinion; Catterson, J., concurs in a separate opinion.
Order, Supreme Court, New York County, entered September 30, 2011, affirmed, with costs.

 The claim seeking to pierce the corporate veil through declaratory judgment, while not a common-law claim, was also dismissed as not a proper subject for a declaratory judgment and because it would be “in direct conflict with the Superintendent’s determinations.” (81 AD3d at 245.)